

Tom Steenson   OSB #74313
Beth Creighton   OSB #97244
STEENSON, SCHUMANN,
TEWKSBURY & ROSE, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon 97204
Phone: (503) 221-1792
Fax:   (503) 223-1516
e-mail: gillian@sstlr.com
        beth@sstlr.com

Of Attorneys for Plaintiffs

FILED'02 MAY 15 16:00USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KWAI FUN WONG,
WU-WEI TIEN TAO ASSOCIATION
and CHONG HUA SHENG MU GONG,

    Plaintiffs,

vs.

DAVID BEEBE, JERRY F. GARCIA,
JACK O'BRIEN, DOUGLAS GLOVER,
JOHN DOES INS OFFICIALS and
UNITED STATES OF AMERICA,

    Defendants.

Civil No. CV 01-718-ST

MEMORANDUM IN RESPONSE
TO DEFENDANTS' OBJECTIONS
TO MAGISTRATE JUDGE STEWART'S
APRIL 5, 2002 ORDER, FINDINGS
AND RECOMMENDATIONS

## I. INTRODUCTION

On April 5, 2002, United States Magistrate Judge Janice Stewart issued an Order, Findings and Recommendations ("Fs & Rs") addressing several pending motions, including Defendants' numerous motions to dismiss, plaintiffs' motion to compel discovery, defendants' motion to stay discovery, and plaintiffs' motion to allow the filing of a second amended complaint. Defendants object to Judge Stewart's Fs & Rs on numerous grounds, almost all of which were asserted by defendants below and rejected for the sound reasons set forth by Judge Stewart.

PAGE 1 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792



## II. LEGAL STANDARD

In considering defendants' motions to dismiss, the court is obligated to accept as true all material allegations in the complaint as well as the reasonable inferences that can be drawn from those allegations. *Patreto v. FDIC*, 139 F3d 696, 699 (9th Cir 1998). Motions to dismiss are generally viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara*, 833 F2d 1270, 1274 (9th Cir 1986); *United States v. City of Redwood City*, 640 F2d 963, 966 (9th Cir 1981). A motion to dismiss under FRCP 12(b)(6) will be granted only if it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 US 41, 45 (1957); *Allwaste, Inc. v. Hecht*, 65 F3d 1523, 1527 (9th Cir 1995); *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). "The issue is not whether [the] plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 US 232, 236 (1974).

In the instant case, Judge Stewart correctly assumed as true the allegations from plaintiffs' First Amended Complaint. Fs & Rs, at pp 7-14.

## III. PRELIMINARY MATTERS

Judge Stewart addressed what she referred to as "Preliminary Matters," including whether plaintiffs should be allowed to file their proposed Second Amended Complaint and whether plaintiffs' motion to compel discovery should be granted. Fs & Rs, pp 3-5. For the reasons set forth by Judge Stewart, plaintiffs' motion to allow the filing of their proposed Second Amended

PAGE 2 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

Complaint[1] (*see* Fs & Rs, pp 47-49) and their motion to compel discovery should be granted.[2]

### III. PLAINTIFFS' FOUR CLAIMS FOR RELIEF

Plaintiffs' first two claims seek damages against the individually named Immigration and Naturalization Service ("INS") defendants pursuant to *Bivens v. Six Unknown Named Agents of the FBI*, 403 US 388 (1971).[3] The first *Bivens* claim is alleged by Plaintiff Wong for violations of the Fourth and Fifth Amendments (First Claim for Relief), while the second is alleged by all plaintiffs for violations of the First and Fifth Amendments (Second Claim for Relief). As described by Judge Stewart, those claims

> "alleged that the individual defendants violated: (1) Wong's rights to: (a) practice her religion; (b) associate with others in the practice of religion, including members of the Association; (c) enjoy the full measure of her liberty rights under the governing immigration law; (d) be free from unreasonable searches and seizures; and (e) be provided substantive and procedural due process of law; and (2) the rights of the Association and Sheng Gong and their members to practice their religion and associate with others in the practice of their religion. Specifically, plaintiffs allege that these rights were violated by defendants' acts of: (1) refusing to grant Wong advance parole or to allow her to leave without advance parole (First Amended Complaint, ¶ 14); (2) refusing to consider Wong's adjustment of status application under INA § 245(i)(*id*, ¶ 19); (3) revoking Wong's parole status without first issuing a decision concerning her request for adjustment of status under INA § 245(I) (*id*, ¶ 18); and (4) applying the expedited removal provision to Wong while her application for adjustment of status was still

---

[1] The primary purposes of the Second Amended Complaint, as currently drafted, is: (1) to add a claim against the United States under the Federal Tort Claims Act ("FTCA") for false imprisonment, intentional interference with economic relations, and negligence; and (2) to add a request for attorney fees to their Fourth Claim for Relief under the Religious Freedom Restoration Act. Because of the statutory waiting period of 180 days before a claim under the FTCA can be filed, the court would not have had jurisdiction over that claim at the times plaintiffs' original Complaint or their First Amended Complaint were filed.

[2] Although plaintiffs' original Complaint was filed on May 18, 2001, plaintiffs have yet to be allowed to conduct any formal discovery.

[3] In *Bivens v. Six Unknown Named Agents of the FBI*, 403 US 388 (1971), the Supreme Court held for the first time that federal officials could be held liable and subjected to awards of damages for violations of the United States Constitution.

PAGE 3 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

1 | outstanding (*id*, ¶ 19)." Fs & Rs, p 15.

2 | In addition, those two claims allege that the individual INS defendants wrongful conduct
3 | was "because of Wong's race or national origin." Fs & Rs, p 36; *see* First Amended Complaint,
4 | ¶ 33.

5 | Plaintiffs' Third Claim for Relief alleges that Wong is entitled declaratory relief with
6 | regard to how the INS handled Plaintiff Wong's adjustment of status application under INA §
7 | 245(i). In accordance with Judge Stewart's Fs & Rs, at p 47, as part of their Second Amended
8 | Complaint, plaintiffs should be allowed to amend their Third Claim for Relief "to seek
9 | declaratory relief that defendants are required to allow plaintiffs to pursue a request for reopening
10 | or reconsideration" of Plaintiff Wong's adjustment of status application.

11 | Plaintiffs' Fourth Claim seeks damages under the Religious Freedom Restoration Act and
12 | alleges that defendants substantially burdened their exercise of religion.

13 | In her Fs & Rs, at pp 16-47, Judge Stewart correctly concluded that plaintiffs First,
14 | Second, and Fourth Claims for Relief are well plead and that plaintiffs should be allowed to
15 | amend their Third Claim for Relief as discussed above.

16 | ## IV. ARGUMENTS[4]

17 | **A.   Judge Stewart Correctly Analyzed the Advance Parole Issue.**

18 | Plaintiffs' First Amended Complaint alleges, in March of 1999, "[Plaintiff] Wong
19 | attempted to make special arrangements with the INS through her immigration attorney to see if
20 | she could leave the United States without advance parole, but was unsuccessful." Firs Amended
21 | Complaint, ¶ 14. As plaintiffs intend to prove at trial, Wong had previously left the country at

---

[4] Plaintiffs incorporate by reference all of their previous legal arguments in opposition to defendants motions to dismiss and therefore will not address all of the objections made by defendants to Judge Stewart's Fs & Rs.

PAGE 4 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

least two[5] other times without advance parole while her application for adjustment of status was pending and *each time* was granted retroactive advance parole.[6] As read in its entirety, plaintiffs' First Amended Complaint alleges defendants acted inappropriately in subjecting Wong to expedited removal and denying her advance parole upon her return to the country.

Defendants contend that the INA does not provide for *nunc pro tunc* or retroactive grants of advance parole. Therefore, they argue, Judge Stewart's conclusion that denying Wong retroactive advance parole could result in liability is "wholly without foundation in law." Defs' Objs, p 9.[7] Clearly, whether or not there is a specific provision of the Immigration and Nationalization Act (herein "INA") that provides for *nunc pro tunc* advance parole, it had been the practice of the INS to grant such advance parole retroactively to Wong and, depending upon what discovery is allowed, to others as well. At the minimum, whether there was a practice to provide *nunc pro tunc* advance parole is a question of fact that cannot be decided upon a motion to dismiss. Moreover, as Judge Stewart correctly concluded, if defendants failed to grant the advance parole, retroactively or otherwise, because of Wong's religion and/or her race or national origin, there would be a clear violation of Wong's constitutional rights. Fs & Rs, pp 36-37. The

---

[5] Although not material to the court's review of Judge Stewart's findings and recommendations, Plaintiff Wong actually may have been granted retroactive advance parole on three rather than just two prior occasions.

[6] Although plaintiffs have not been allowed any discovery in the case to date, they believe that discovery will reveal that the INS routinely exercises its discretion and grants retroactive advance parole, as it had to Plaintiff Wong on previous occasions.

[7] Defendants cite *Dimenski v. INS*, 275 F3d 574 (7th Cir 2001) for the proposition that the INA does not provide for *nunc pro tunc* or retroactive grants of advance parole. A careful reading of *Dimenski* reveals that the decision does not stand for that proposition at all. Dimenski entered the United States on a tourist visa and failed to leave when his visa expired. Six years later, he took a month long trip to see a sick relative, sought and was granted advance parole. He was readmitted without any problems, but several months later the INS initiated a deportation proceeding against him. The Seventh Circuit in *Dimenski* held that parolees are subject to exclusion rather than deportation proceedings. Contrary to defendants assertion, the Seventh Circuit made no holding regarding whether the INA provides for *nunc pro tunc* or retroactive grants of parole.

PAGE 5 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

motivation behind defendants' acts is of course a question of fact which cannot be decided upon a motion to dismiss.

### B. Judge Stewart Correctly Analyzed Wong's Revocation of Parole Issue.

Judge Stewart correctly concluded that plaintiffs' First and Second Claims for Relief adequately allege that Wong's rights under the First Amendment and Due Process clauses of the United States Constitution could have been violated when defendants revoked Wong's parole. Fs & Rs, p 36. Although Wong's parole status was due to expire on April 29, 1999, when Defendant Beebe receive notification on April 26, 1999 that Wong had applied for an adjustment of status pursuant to INA § 245(i), her status could have been extended. In fact, as plaintiffs intend to prove, Wong had entered this country at least twice before while her applications for adjustment of status were pending and without advance parole, but had experienced no problems reentering the United States. Whether or not the decision not to renew or extend her parole status was based on impermissible factors such as religion and/or race or national origin is a question which cannot be decided upon a motion to dismiss.[8]

### C. Wong Should Have Been Informed of Appeal Rights Associated with the Denial of Her Request for an Adjustment of Status.

Judge Stewart correctly concluded that plaintiffs' First and Second Claims for Relief adequately allege that Wong's rights under the First Amendment and Due Process clauses of the United States Constitution could have been violated when defendants failed to inform Wong of her appeal rights and deprived her of the opportunity to contest the denial of her application for adjustment of status by requesting a reopening or reconsideration under 8 CFR § 103.5(a). See Fs & Rs, p 45

Defendants argue that a motion to reopen or reconsider such a request would have been

---

[8] Again, because plaintiffs have not been allowed any discovery, plaintiffs do not know what defendants' usual practices may be.

PAGE 6 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

futile because it would not have stayed her removal, even if defendants were obligated to inform Wong of her right to file a motion to reopen or reconsider. Defs' Obj, p 11. However, 8 CFR § 103.5(a)(1)(iii)(E)(iv)(1999)[9] states that "[u]nless the Service directs otherwise, the filing of a motion to reopen or reconsider or of a subsequent application or petition does not stay the execution of any decision in a case to extend a *previously set departure date*." (Emphasis added) In Wong's case, at the time of Beebe's denial of her application for adjustment of status on June 17, 1999, there was no valid expedited removal order. Wong's expedited removal order was issued, May 20, 1999, but not served on June 22, 1999. *See* First Amended Complaint, ¶¶19, 24. Pursuant to 8 CFR § 245.1(c)(9)(i)(E), removal proceedings do not "commence" until "issuance and service of the Notice and Order of Expedited Removal."[10] Therefore, on June 17, 1999, at the time of the denial of Wong's request for an adjustment of status, there was no removal proceedings commenced and therefore no "previously set departure date" and 8 CFR 103.5(a)(1)(iii)(E)(iv) (1999) does not apply. Moreover, even if 8 CFR § 103.5(a)(1)(iii)(E)(iv) (1999) did apply to Wong's case, defendants had discretion to "direct" that the expedited removal order be stayed and failed to do so. Again, if defendants' decisions in these regards are proven to be based on Wong's religion and/or her race or national origin, plaintiffs will prevail. Again, a motion to dismiss is not the proper procedure to decide such issues of fact.

**D.    The Unconstitutional Acts Associated With Wong's Detention in Jail and Her Strip Searches May Confer Liability on Defendants**

Anyone who sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to violate a individual's constitutional rights faces liability.

---

[9] Defendants cite to the 2000 revision of the CFRs in their brief, however the controlling CFR is the 1999 revision.

[10] It is also worth noting that Wong was not in removal proceedings when she applied for adjustment of status, contrary to defendants' implication when they cited to 8 CFR § 245(1)(c). *See* Defs' Objs, p 12.

PAGE 7 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z: Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

*Johnson v. Duffy,* 588 F2d 740, 743-44 (9th Cir 1978). Therefore, although the individual defendants did not personally participate in the alleged violations of Wong's constitutional rights while she was in jail (strip searches, denial of vegetarian meals, denial of a translator and means for Wong to contact her followers or her attorney), they can be held liable for setting in motion the series of acts that caused the constitutional deprivations to Wong. Also, if the individual defendants knew or should have known that constitutional violations would result because of their decision to place Wong in jail,[11] and such constitutional violations did result, they may be held liable. See *Harris v. Roderick,* 126 F3d 1189. 1196 (9th Cir 1997), *cert denied,* 522 US 1115 (1998).

Since the individual defendants affirmatively set in motion the acts which led to the constitutional violations suffered by Wong in jail by subjecting her to expedited removal in the first place, and/or they knew or should have known of the jail practices about which Wong complaints,[12] Judge Stewart correctly concluded that dismissal is inappropriate on the grounds that the individual defendants did not personally participate in the constitutional violations suffered by Wong in jail.[13] Fs & Rs, pp 27-31

Judge Stewart also correctly concluded in her analysis of the strip search issue that the Fourth Amendment, i.e. the search and seizure provisions, applied. The Fourth Amendment analysis applies to pre-trial detainees. See *Fuller v. MG Jewelry,* 950 F2d 1437 (9th Cir 1991).

---

[11] In fact, plaintiffs intend to prove that Wong could have been placed in a hotel or some other facility, as was sometimes done by the INS, as opposed to going to jail.

[12] It is not necessary for plaintiffs to set forth facts stating that the detention was due to religious beliefs or that there was a conspiracy to subject Wong to an unreasonable search, as defendants claim. Defs' Objs, p 14. The allegations that the initial acts which caused her to be detained were motivated by racial and religious animus are enough to survive a motion to dismiss.

[13] Defendants assert that *Johnson v. Duffy* only applies in the context of respondeat superior and that plaintiffs must prove the individual defendants were in essence the supervisors of the county officials. Defs' Objs, p 15. Defendants cite no authority for their position, nor do *Johnson v. Duffy* and the other Ninth Circuit cases relied upon by Judge Stewart so require.

PAGE 8 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

Defendant urges, without citation to any supporting authority, the adoption of an analysis under the Eighth Amendment protection against cruel and unusual punishment, thus placing Wong, an individual detained pursuant to an immigration hold, on the same footing with individuals convicted of crimes. Defs' Objs, p 14. Defendants' comparison of aliens detained by immigration to convicted criminals is misplaced. Wong's detention was civil, not criminal in nature. *See Zadvydas v. Davis,* 533 US 678, 690 (2001). Thus, Wong has the same rights as an arrestee or pre-trial detainee and Judge Stewart's analysis of Wong's strip searches under the Fourth Amendment was proper.

Defendants cite *Fuller v. MG Jewelry*, 950 F2d 1437, 1447 (9th Cir 1991), for the proposition that "searches of detainees may be conducted where a detainee is about to be admitted (such as Wong) or they may be conducted where a detainee is a member of the general jail population where such searches are necessary to protect the security needs of the institution." Defs' Objs, p 14. In fact, the holding in *Fuller* is that

> "strip and body cavity searches of detainees may be conducted based on reasonable suspicion only where such searches are necessary to protect the overriding security needs of the institution - that is, where officials have a reasonable suspicion that a particular detainee harbors weapons or dangerous contraband."
> *Fuller*, 950 F2d at 1447.

In accordance with *Fuller*, plaintiffs will prove at trial that the individual defendants had no right to subject Wong to a strip search because there was no reasonable suspicion that she harbored a weapon or dangerous contraband, nor had she been convicted of a crime of violence. More importantly at this stage of the litigation, Judge Stewart correctly analyzed the law and correctly applied the motion to dismiss standard to deny defendants' dismissal motions with respect to the strip searches of Wong.

On one final point, defendants cite *Zadvydas v. Davis,* 533 US 678 (2001), in support of their position that because Wong was in detention subject to removal proceedings she had *no* constitutional rights. Defs' Objs, p 13. In *Zadvydas,* the Supreme Court determined that

PAGE 9 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

detention proceedings were civil, not criminal, and therefore not punitive in nature. *Id* at 690. The Court then went on to determine that 8 USC § 1231(a)(6) contained a maximum of 6 months of detention as a reasonable time limitation unless there is a significant likelihood of removal in the reasonably foreseeable future. *Id* at 701. Nowhere in *Zadvydas* does the Court hold that "detention while under a final order of removal does not violate due process where the detention is nonpunitive in purpose and effect" as defendants assert. Defs' Objs, p 13. Thus, defendants' reliance on that case for the proposition cited is misplaced.

E.  **The Individual Defendants Are Not Entitled to Qualified Immunity.**

Judge Stewart correctly relied upon well-established Ninth Circuit law when she ruled that qualified immunity is not available to the individual defendants on plaintiffs' *Bivens* claims if the unlawfulness of the officer's conduct was apparent in light of pre-existing law. Fs & Rs, p 38-39; *Pierce v. Multnomah County,* 76 F3d 1032, 1037 (9th Cir), *cert denied* 519 US 1006 (1996), quoting *Anderson v. Creighton,* 438 US 635, 640 (1987). If defendants exercised their discretion based upon the impermissible factors of religion and/or race or national origin, then defendants would be unable to draw upon the defense of qualified immunity, even if they followed INS regulations in effectuating their alleged discriminatory purpose. See *Grossman v. City of Portland,* 33 F3d 1200, 1209 (9th Cir 1994)(an officer who enforces an ordinance in an egregious manner is not entitled to qualified immunity).[14]

F.  **The Allegations in Plaintiffs' First Amended Complaint Are Sufficient to State a Claim under RFRA**

Defendants' arguments that plaintiffs' Fourth Claim for Relief is insufficient to state a claim under RFRA are once again misplaced at this stage of the litigation. Defendants ask the court to reach conclusions which are contrary to the allegations in the First Amended Complaint. In doing so, they fail to recognize that in considering a motion to dismiss the court must accept

---

[14] Defendants assertions that plaintiffs allegations are not supported by the facts are premature. At this juncture, the court must accept plaintiff's allegations as true.

PAGE 10 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

the allegations set forth in the complaint as true. *Valdez v. US,* 837 F Supp 1065, 1067 (ED Ca 1993), *aff'd* 56 F3d 1177 (9th Cir 1995).

Defendants assert that RFRA does not provide for an award of monetary damages. RFRA specifically states that its purpose is to "provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 USC § 2000bb(b)(2). Nowhere does the act limit plaintiffs' relief to injunctive or declaratory relief as suggested by defendants. Nor do defendants cite to any case law to support their position. RFRA's enforcement provision entitles a person whose exercise of religion is substantially burdened by governmental action to "appropriate relief." 42 USC § 2000bb(b). While no cases could be located that squarely address the issue of monetary damages, at least several cases have implied this type of relief is available under RFRA. *See, e.g., Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F3d 525, 538, n. 12 (1st Cir 1995) (discussion of RFRA based on assumption that the Act created a retroactive cause of action for monetary damages); *Hall v. Griego,* 896 F Supp 1043, 1049 (Colo 1995) (granting summary judgment to individual defendants on claim under RFRA for monetary damages on qualified immunity grounds because law not clearly established at time alleged violation of prisoner plaintiff's free exercise rights occurred, which was prior to enactment of RFRA).

Additional authority exists to support a finding that monetary damages are an available form of relief under RFRA. In *Gebser v. Lago Vista Indep Sch,* 524 US 274 (1998), a case decided after the enactment of RFRA, the United States Supreme Court confirmed the availability of monetary damages under an *implied* private right of action for Title IX violations, at least in cases in which intentional discrimination is alleged. 524 US at 281, *citing to a previous decision of the Court, Franklin v. Gwinnett County Pub Sch,* 503 US 60 (1992). Unlike Title IX, which creates only a judicially implied private right of action for violations, RFRA contains an express private right of action for a "claim or defense" against the federal

PAGE 11 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

1  government for any action that substantially burdens the exercise of religion.[15]  If monetary
2  damages may be sought, under certain statutes on an implied private right of action theory, so too
3  should they be allowed under RFRA, which contains an express private right of action for
4  aggrieved persons.

5  Next, defendants argue that religious organizations do not have standing to bring a claim
6  under RFRA because they are not a "person." Defs' Objs, p 17.  Judge Stewart correctly held
7  that Wu Wei Tien Tao Association and Chong Hua Sheng Mu Gong, the two associational
8  plaintiffs in the case, have standing to bring this action because plaintiffs have alleged that they
9  have suffered some injury as a result of defendants' illegal conduct.  *Valley Forge Christian Coll.*
10 *v. Americans United for Separation of Church and State, Inc,* 454 US 464, 472 (1982) (citations
11 and footnote omitted).  *See* Fs & Rs, pp 25-26.  In addition, organizations have standing to bring
12 claims, if they suffer some injury because they are considered "persons" within the meaning of
13 the law.  Under the law, the term "persons" includes entities such as Wu-Wei Tien Tao
14 Association and Chong Hua Sheng Mu Gong. *See, e.g.,* 1 USC § 1 (in federal statutes, the term
15 "person" is defined to include "corporations, companies, associations, firms, partnerships,
16 societies, and joint stock companies, as well as individuals"); *see also, Clinton v. City of New*
17 *York,* 524 U.S. 417 (1998), at 428, n. 13.  Furthermore, at least one court in this circuit has held
18 that a RFRA claim could be asserted by a religious organization (i.e., the Church of Latter Day
19 Saints). *In re Hodge,* 220 Bankr Rptr 386 (ID 1998). Plaintiffs allege their rights to practice their
20 religion were substantially burdened when Wong was incarcerated, strip searched, defiled, and
21 denied vegetarian meals.  Since those allegations must be taken as true, Judge Stewart correctly
22 concluded that plaintiffs have sufficiently plead a RFRA violation that withstands a motion to
23 dismiss.

---

[15] Under federal law, a "claim" is a pleading setting forth, among other things, "a demand for judgment for the relief the pleader seeks," and necessarily includes claims for monetary damages. *See* FRCP 8.

PAGE 12 -- MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

Finally, defendants assert there are no attorney fees allowed on a RFRA claim. Quite to the contrary, 42 USC § 1988 specifically allows for attorney fees for a RFRA claim. Again, Judge Stewart correctly concluded that plaintiffs should be allowed to add a request for attorney fees to that claim in their Second Amended Complaint.

DATED this 15th day of May 2002.

*Beth Creighton*
TOM STEENSON
BETH CREIGHTON
Of Attorneys for Plaintiffs

PAGE 13 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792

## CERTIFICATE OF SERVICE

I hereby certify that I telefaxed (202 / 616-9366) and mailed a true copy of the foregoing memorandum to Christine A. Bither, attorney for defendants, addressed to her Washington, D.C., office address on this date.

DATED this 15th day of May 2002.

BETH CREIGHTON
Of Attorneys for Plaintiffs

PAGE 14 – MEMO IN RESP TO DEFS' OBJS TO APRIL 5, 2002 ORDER, ETC.

Z:\Tom\CASES\Wu Wei\Pleadings\memo opp to objections to 0405 order.wpd

STEENSON
SCHUMANN
TEWKSBURY
and ROSE, PC
815 S.W. 2nd Ave. #500
Portland, Or. 97204
Tel: (503) 221-1792